# In the United States Court of Appeals for the Fifth Circuit

**Cure & Associates, P.C.; Premier Wealth & Retirement Management, LLC,**
*Plaintiffs – Appellees*

**v.**

**LPL Financial LLC,**
*Defendant - Appellant*

On Appeal from Civil Action No. 1:22-cv-00311-MJT in the
United States District Court for the Eastern District of Texas
Honorable Michael J. Truncale, Presiding Judge

## APPELLANT'S OPENING BRIEF ON THE MERITS

Jo Ben Whittenburg
ORGAIN BELL & TUCKER, LLP
470 Orleans Street
P.O. Box 1751
Beaumont, TX 77704
(409) 838-6412

Ellen Sessions
Ronald D. Smith
Kristina Williams
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 3600
Dallas, TX 75201
(214) 855-8000

Todd D. Batson
NORTON ROSE FULBRIGHT US LLP
1301 McKinney Street, Suite 5100
Houston, TX 77010
(713) 651-5151

*Counsel for Appellant LPL Financial LLC*

# In the United States Court of Appeals for the Fifth Circuit

**Cure & Associates, P.C.; Premier Wealth & Retirement Management, LLC,**
*Plaintiffs – Appellees*

**v.**

**LPL Financial LLC,**
*Defendant - Appellant*

On Appeal from Civil Action No. 1:22-cv-00311-MJT in the
United States District Court for the Eastern District of Texas
Honorable Michael J. Truncale, Presiding Judge

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal.

1. Appellant-Defendant is LPL Financial LLC. LPL Financial LLC's sole member is LPL Holdings, Inc. LPL Holdings, Inc. is wholly owned by LPL Financial Holdings Inc.

2. Attorneys for Appellants-Plaintiffs on appeal and in the District Court are:

Ellen Sessions, Ronald Smith, Kristina Williams, and Todd D. Batson of Norton Rose Fulbright US LLP.

Jo Ben Whittenburg of Orgain Bell & Tucker, LLP.

3.    Appellees-Plaintiffs are Cure & Associates, P.C.; and Premier Wealth & Retirement Management, LLC. Premier's sole member is Eileen Law Cure.

Eileen Law Cure was also a Plaintiff in the District Court but is not an appellee in the instant appeal.

4.    Attorney for Appellees-Plaintiffs in the District Court is Ellyn J. Clevenger.

*/s/ Kristina Williams*
Kristina Williams
*Attorney of Record for Appellant*

**STATEMENT REGARDING ORAL ARGUMENT**

Appellant-Defendant LPL Financial LLC respectfully requests oral argument because this appeal involves unique applications of: (1) the equitable estoppel doctrine to nonsignatories of an arbitration agreement that are wholly owned and controlled by a signatory; and (2) a stay of those nonsignatories' claims, all of which are duplicative of the signatory's claims that were compelled to arbitration. Oral argument is necessary to facilitate this Court's *de novo* review of both issues because it will ensure a thorough analysis of the business relationship between the parties, thereby shedding light on the arbitration agreement at issue.

# TABLE OF CONTENTS

**PAGE**

CERTIFICATE OF INTERESTED PERSONS ...................................................... i

STATEMENT REGARDING ORAL ARGUMENT ........................................... iii

TABLE OF AUTHORITIES ............................................................................. vi

STATEMENT OF JURISDICTION ....................................................................1

STATEMENT OF ISSUES PRESENTED ...........................................................3

STATEMENT OF THE CASE .............................................................................4

    I.     The Parties Entered into a Representative Agreement Wherein Any Disputes Between Them would be Subject to Arbitration...........4

    II.    LPL Terminated Its Relationship with Cure........................................6

    III.   Cure, Associates, and Premier File Suit in the Eastern District of Texas, Instead of Initiating Arbitration. ...............................................8

SUMMARY OF THE ARGUMENT ..................................................................10

ARGUMENT .....................................................................................................12

    I.     Standard of Review ...........................................................................12

    II.    The District Court Erroneously Denied LPL's Motion to Compel Premier's and Associates' Claims Against LPL to Arbitration. .........12

           A.    Under California law—the parties' choice of law— equitable estoppel compels Premier's and Associates' claims against LPL to arbitration. ..........................................14

           B.    Under Texas law, equitable estoppel principles also make clear that Premier's and Associates' claims must be resolved in arbitration ..............................................................21

III.    Even if the District Court Correctly Denied LPL's Motion to Compel Arbitration of Associates' and Premier's Claims, the District Court Erroneously Denied LPL's Motion to Stay Remaining Proceedings Pending Arbitration. ...................................25

CONCLUSION.................................................................................................30

CERTIFICATE OF SERVICE ........................................................................32

CERTIFICATE OF COMPLIANCE................................................................33

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*A-1 Am. Fence, Inc. v. Wells Fargo Bank, N.A.*,
No. 1:20-CV-441, 2021 WL 7184974 (E.D. Tex. Nov. 16, 2021) ...................27

*Arthur Andersen LLP v. Carlisle*,
556 U.S. 624 (2009)........................................................................................14

*Bayles v. Evans*,
842 S.E.2d 235 (W. Va. 2020).......................................................................22

*BOKF, NA v. Wise*,
No. 3:18-CV-794-N, 2019 WL 7902963 (N.D. Tex. Apr. 25, 2019) ...............27

*Bowles v. OneMain Fin. Grp., L.L.C.*,
954 F.3d 722 (5th Cir. 2020) .........................................................................13

*Crawford Pro. Drugs, Inc. v. CVS Caremark Corp.*,
748 F.3d 249 (5th Cir. 2014) .........................................................................14

*Crowley Mar. Corp. v. Boston Old Colony Ins. Co.*,
70 Cal. Rptr. 3d 605 (Cal. Ct. App. 2008) .....................................................15

*Cruz v. Resolute Cap. Partners LTD LLC*,
No. 3:22-CV-02349-E, 2023 WL 3021079 (N.D. Tex. Apr. 20,
2023).................................................................................................................27

*Exigen Props., Inc. v. Genesys Telecomms. Lab'ys, Inc.*,
No. A140081, 2016 WL 520283 (Cal. Ct. App. Feb. 9, 2016)
(unpublished)..................................................................................................15

*In re FirstMerit Bank, N.A.*,
52 S.W.3d 749 (Tex. 2001) (orig. proceeding).................................................22

*G.T. Leach Builders, LLC v. Sapphire V.P., LP*,
458 S.W.3d 502 (Tex. 2015)............................................................................22

*Hawkins v. i-TV Digitalis Tavkozlesi zrt.*,
935 F.3d 211 (4th Cir. 2019) ..........................................................................2

*Hill v. G E Power Sys., Inc.*,
    282 F.3d 343 (5th Cir. 2002) ..............................................................26

*Hoagland ex rel. Midwest Transit, Inc. v. Sandberg, Phoenix & von Gontard, P.C.*,
    385 F.3d 737 (7th Cir. 2004) ..............................................................2

*In re Hornbeck Offshore (1984) Corp.*,
    981 F.2d 752 (5th Cir. 1993) ..............................................................25

*Howery v. Allstate Ins. Co.*,
    243 F.3d 912 (5th Cir. 2001) ..............................................................1

*I F G Port Holdings, L.L.C. v. Lake Charles Harbor & Terminal Dist.*,
    82 F.4th 402 (5th Cir. 2023) ..........................................................1, 3

*Jones Walker, LLP v. Petaquilla Minerals, Ltd.*,
    No. 14-1203, 2015 WL 3772670 (E.D. La. June 17, 2015) ..............27

*JSM Tuscany, LLC v. Superior Ct.*,
    123 Cal. Rptr. 3d 429 (Cal. Ct. App. 2011) ..............................*passim*

*Keller Constr. Co. v. Kashani*,
    269 Cal. Rptr. 259 (Cal. Ct. App. 1990) ..........................................20

*LaSonde v. CitiFinancial Mortg. Co.*,
    614 S.E.2d 224 (Ga. Ct. App. 2005) ................................................22

*Lateral Link Grp. v. BLA Schwartz*,
    No. B253862, 2014 WL 5500382 (Cal. Ct. App. Oct. 31, 2014) (unpublished) ......................................................................................15

*LDF Constr., Inc. v. Bryan*,
    324 S.W.3d 137 (Tex. App.—Waco 2010, no pet.) ..........................23

*Lonatro v. United States*,
    714 F.3d 866 (5th Cir. 2013) ..............................................................13

*Madden v. Kaiser Found. Hosps.*,
    17 Cal. 3d 699 (1976) ........................................................................20

*Meyer v. WMCO-GP, LLC*,
    211 S.W.3d 302 (Tex. 2006)..............................................................22

*MoistTech Corp. v. SensorTech Sys., Inc.*,
    No. CV 15-4952 PA (JPRx), 2015 WL 12778416 (C.D. Cal. Sept.
    14, 2015)..........................................................................................15

*MTA, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    114 So. 3d 27 (Ala. 2012)..................................................................22

*Noble Cap. Fund Mgmt., L.L.C. v. US Cap. Global Inv. Mgmt., L.L.C.*,
    31 F.4th 333 (5th Cir. 2022) ..............................................................12

*Olshan Found. Repair Co. of Mobile, LP v. Schultz*,
    64 So. 3d 598 (Ala. 2010)..................................................................22

*Peak Pipe & Supply, LLC v. UMW Oilfield (L) Int'l Ltd.*,
    No. 3:18-CV-410-L, 2018 WL 6177268 (N.D. Tex. Nov. 27, 2018) ...............27

*Pearson v. Hilton Head Hosp.*,
    733 S.E.2d 597 (S.C. Ct. App. 2012)..................................................22

*Pillar Project AG v. Payward Ventures, Inc.*,
    279 Cal. Rptr. 3d 117 (Cal. Ct. App. 2021) ......................................14

*Rainier DSC 1, L.L.C. v. Rainier Cap. Mgmt., L.P.*,
    828 F.3d 356 (5th Cir. 2016) ............................................................26

*Smith v. Toyota Motor Corp.*,
    978 F.3d 280 (5th Cir. 2020) ......................................................2, 3

*Subway Equip. Leasing Corp. v. Forte*,
    169 F.3d 324 (5th Cir. 1999) ............................................................26

*Tittle v. Enron Corp.*,
    463 F.3d 410 (5th Cir. 2006) ............................................................12

*Vallejo v. Garda CL Sw., Inc.*,
    No. H-12-0555, 2013 WL 6190175 (S.D. Tex. Nov. 26, 2013) ......................27

*In re Vesta Ins. Grp., Inc.*,
    192 S.W.3d 759 (Tex. 2006) (orig. proceeding) (per curiam) ..........................22

*Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*,
   372 F.3d 339 (5th Cir. 2004) ..................................................................*passim*

*In re Weekley Homes, L.P.*,
   180 S.W.3d 127 (Tex. 2005) (orig. proceeding).........................................23, 25

*Wesdem, L.L.C. v. Ill. Tool Works, Inc.*,
   70 F.4th 285 (5th Cir. 2023) ...........................................................................2, 3

## CONSTITUTION, STATUTES & RULES

9 U.S.C. § 3..................................................................................................25, 26

9 U.S.C. § 16(a)(1)(A)........................................................................................1

9 U.S.C. § 16(a)(1)(B)........................................................................................1

28 U.S.C. § 1332................................................................................................1

28 U.S.C. § 1332(a)............................................................................................3

28 U.S.C. § 1332(c)(1)......................................................................................2, 3

Fed. R. App. P. 3(a)(1)......................................................................................13

Fed. R. App. P. 4(a)(1)(A) ................................................................................1

Fed. R. App. P. 4(a)(3)......................................................................................13

## SECONDARY MATERIALS

FINRA, FORM U5, https://www.finra.org/registration-exams-
   ce/broker-dealers/registration-forms/form-u5 (last accessed Oct.
   24, 2023)..........................................................................................................8

## STATEMENT OF JURISDICTION

This is an appeal from a district court's denial of a defendant's motion to compel arbitration as to certain plaintiffs and motion to stay litigation pending arbitration. In short, the District Court had jurisdiction under 28 U.S.C. § 1332, and this Court has jurisdiction under 9 U.S.C. § 16(a)(1)(A), (B). The District Court entered its order on August 16, 2023, and Defendant LPL Financial LLC ("Appellant" or "LPL") timely filed the notice of appeal on September 6, 2023. Fed. R. App. P. 4(a)(1)(A); ROA.577-590, 924-925.

"[T]he burden of establishing federal jurisdiction rests on the party seeking the federal forum"—here, the Plaintiffs. *See Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). However, in response to this Court's September 18, 2023 directive, Appellant addresses the basis for diversity jurisdiction below.

The District Court had diversity jurisdiction over this case under 28 U.S.C. § 1332. When a suit is based on diversity jurisdiction, as it is here, the parties to the suit must be completely diverse—no plaintiff can be a citizen of the same state as any defendant. *I F G Port Holdings, L.L.C. v. Lake Charles Harbor & Terminal Dist.*, 82 F.4th 402, 408 (5th Cir. 2023). Here, the Plaintiffs/Appellees are citizens of Texas, and the Defendant/Appellant is a citizen of Massachusetts and California, as shown *infra* pp. 2-3. Thus, there is complete diversity. *See I F G Port Holdings*, 82 F.4th at 408.

A professional corporation, which Plaintiff Cure & Associates, P.C. ("Associates") is here, is treated as any other corporation for diversity purposes. *See Hoagland ex rel. Midwest Transit, Inc. v. Sandberg, Phoenix & von Gontard, P.C.*, 385 F.3d 737, 739 (7th Cir. 2004) (citing to caselaw from the Second, Third, Fourth, and Eleventh Circuits); *see also Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 223 (4th Cir. 2019) (citing *Hoagland*). A corporation is considered a citizen of the state in which its principal place of business is located, as well as the state of its incorporation. *See* 28 U.S.C. § 1332(c)(1); *Smith v. Toyota Motor Corp.*, 978 F.3d 280, 282 (5th Cir. 2020). Associates is a professional corporation registered and with its principal place of business in Texas. ROA.125-126.

When a party is a limited liability company, as Plaintiff Premier Wealth & Retirement Management, LLC ("Premier") and LPL are here, "citizenship is determined not by [the party's] business operations but instead by the citizenship of all of its members." *Wesdem, L.L.C. v. Ill. Tool Works, Inc.*, 70 F.4th 285, 290 n.3 (5th Cir. 2023). Premier's sole member is Plaintiff Eileen Law Cure ("Cure"), a citizen of Texas. ROA.116-117, 120-122. Thus, Premier is a citizen of Texas for purposes of diversity jurisdiction. *See Wesdem*, 470 F.4th at 290 n.3.

The sole member of LPL Financial LLC is LPL Holdings, Inc. *See* Appellant's Unopposed Motion for Leave to File Amended Answer Pursuant to 28 U.S.C. § 1653, No. 23-40519 (5th Cir. Oct. 17, 2023) ("Motion to Amend") at

Exhibit A-1; Order Granting Appellant's Motion to Amend, No. 23-40519 (5th Cir. Oct. 27, 2023). LPL Holdings, Inc. is a Massachusetts corporation with its principal place of business in San Diego, California. Motion to Amend at Ex. A-5. LPL Holdings, Inc. is thus a citizen of Massachusetts and California for the purposes of diversity jurisdiction. *See* 28 U.S.C. § 1332(c)(1); *see also Smith*, 978 F.3d at 282. In turn, LPL is a citizen of Massachusetts and California for the purposes of diversity jurisdiction because its sole member (LPL Holdings, Inc.) is a citizen of Massachusetts and California. *See Wesdem*, 70 F.4th at 290 n.3; *Smith*, 978 F.3d at 282.

In sum, Plaintiffs Cure, Premier, and Associates are citizens of Texas, and Defendant LPL is a citizen of Massachusetts and California. Plaintiffs also seek millions of dollars in damages, which exceeds the $75,000 amount-in-controversy requirement for diversity jurisdiction. *Compare* 28 U.S.C. § 1332(a), *with* ROA.33. Thus, there is complete diversity, and the District Court had diversity jurisdiction over this case. *See I F G Port Holdings*, 82 F.4th at 408.

## STATEMENT OF ISSUES PRESENTED

1. Did the District Court erroneously deny LPL's motion to compel arbitration of Premier's and Associates' claims against LPL, even though their claims are inextricably intertwined with a contract containing an arbitration agreement?

2.    Did the District Court erroneously deny LPL's motion to stay litigation of Premier's and Associates' claims pending arbitration, where it granted in part LPL's motion to compel as to Cure, despite that Premier's, Associates', and Cure's claims against LPL are substantially identical?

## STATEMENT OF THE CASE

**I.    The Parties Entered into a Representative Agreement Wherein Any Disputes Between Them would be Subject to Arbitration.**

LPL Financial LLC is a broker-dealer and Financial Industry Regulatory Authority ("FINRA") Member Firm.   ROA.329.   Cure was an independent contractor and registered representative with LPL from 2018 to 2021.  ROA.273. Cure is the President and sole director of Associates and the sole member of Premier. ROA.377-384, 386-393.

When Cure associated with LPL, she executed a Form U4 and a Representative Agreement.   ROA.352-367 (Form U4), 332-352 (Representative Agreement).  With respect to arbitration, the signed Form U4 provides: "I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person[.]"   ROA.364 (emphasis removed).   The self-regulatory organization indicated on Cure's Form U4 is FINRA.  ROA.353.

The Representative Agreement that Cure signed also contains an arbitration provision.  It states:

Representative [Cure] hereby expressly agrees to submit to final and binding arbitration *before FINRA* any and all disputes, claims or controversies relating to Representative's association with or termination from LPL. Such disputes, claims, or controversies shall be arbitrated *in accordance with FINRA rules* . . .. Specific examples of disputes, claims or controversies that are required to be arbitrated include, but are not limited to, allegations of unlawful termination, sexual or racial harassment or discrimination on the job, gender discrimination, and claims of age or handicap discrimination.

ROA.338 (emphasis added).

Under the Representative Agreement, LPL agreed to appoint Cure as a "limited agent" to conduct business related to securities, investments, investment advisory services, and insurance products. ROA.332. Cure undertook a number of obligations under the Representative Agreement, including agreements to:

- "*[C]onform to the* established *customs, standards and policies and procedures of* the securities industry and *LPL*." ROA.336 (emphasis added).

- Accept "supervision and control by [her] branch manager and officers of LPL as is necessary to enforce," *inter alia*, FINRA and SEC rules and regulations. ROA.336.

- "[C]onduct [herself] and [her] affairs in a professional manner consistent with the building of a quality reputation for [herself] and LPL." ROA.334.

- "[N]ot engage in any outside business activity without prior written notification and approval from LPL." ROA.334.

The agreement provided that it "may be terminated by LPL at any time, without notice for breach of this Agreement by [Cure]." ROA.337.

5

LPL has a Code of Conduct that "defines the standards of conduct [LPL] expect[s] from all employees and financial professionals[.]"  ROA.434.  The Code of Conduct contains multiple provisions concerning discrimination, harassment, and other important topics, including an express prohibition of "employment discrimination against any employee, financial professional, or applicant based on any legal protected status[.]"  ROA.436-437.  The Code of Conduct defines "legally protected status" to encompass race and color.  ROA.437.

The Representative Agreement also prohibits Cure from "engag[ing] in any outside business activity without prior written notification and approval from LPL."  ROA.334.  While affiliated with LPL, Cure signed and submitted a number of Outside Business Activity Notification Forms, including forms for Premier and Associates.  ROA.410-427.  In her submission for Premier, Cure stated that Premier was a "DBA for LPL Business (entity for LPL Business)[.]"  ROA.410.  She also attested that there were no "other businesses or services advertised under [the Premier] name other than [her] LPL Financial securities business."  ROA.410.

## II.    LPL Terminated Its Relationship with Cure.

In June 2021, Cure interviewed candidates for an open receptionist position, purportedly for Associates' Nederland office.  ROA.277.  Cure admits that, following an interview of an applicant, she made the following statement in a Skype message to her office manager:

I specifically said no blacks. I'm not a prejudiced person, but our clients are 90 percent white, and I need to cater to them, so that interview was a complete waste of my time.

ROA.278. Cure's message was posted by a TikTok user, who received it from one of Cure's allegedly disgruntled employees. There is no allegation that the TikTok user has any relationship with LPL. ROA.278. The message quickly spread. *See* ROA.278. On August 4, 2021, following an internal investigation, LPL notified Cure that it was terminating its relationship with her effective immediately. ROA.907-909. Cure alleges that LPL also sent Cure's clients a letter advising that Cure was "no longer licensed with LPL Financial as of 08/04/2021." ROA.282.

Cure, Associates, and Premier also complain of the following statements that they allege were made by LPL:

- LPL's response to a post on TikTok by a user named Curtis, who asked if LPL "affiliate[s] with racist firms and stand[s] by this type of behavior." LPL responded: "Curtis, we condemn racism and aim to create an inclusive workplace where everyone feels they belong. An internal investigation is underway." ROA.280-281.

- The following quote by LPL within an article: "We have seen the video alleging discriminatory comments by Ms. Cure and are deeply concerned by the statements attributed to her[.] We immediately launched an internal investigation to review the matter and a decision is forthcoming this week regarding Ms. Cure's relationship with the firm. We will not tolerate discrimination of any kind in our LPL community." ROA.281.

- The following statement by LPL in a financial publication: "following our process for review of adviser [sic] conduct, Ms. Cure is no longer a client of the firm." ROA.281-282.

- The following statements attributed to LPL's CEO Dan Arnold: (1) "after reviewing the facts, it was a violation of our policies"; and (2) "we go back to our principles. We have policies that protect those principles, and we stand for the principle of equity—and that's for everyone." ROA.282.

FINRA rules required LPL to submit a Form U5 (Uniform Termination Notice for Securities Industry Registration) when it terminated its affiliation with Cure.[1] LPL provided the following explanation on Cure's Form U5:

> Internal communication reflected potentially racially discriminatory hiring/interviewing preferences contrary to Firm standards of conduct. Not securities related.

ROA.369. Cure, Associates, and Premier contend that LPL's explanation was defamatory. ROA.291-293. However, Cure concedes that she sent the Skype message which expressly stated that she wanted "no blacks" to interview for the open position. ROA.278. She also concedes that "Plaintiff Cure & Associates chose to fill its receptionist position with an employee who reflected the racial makeup of its Nederland clientele." ROA.204.

## III. Cure, Associates, and Premier File Suit in the Eastern District of Texas, Instead of Initiating Arbitration.

Cure, Associates, and Premier filed suit against LPL in the Eastern District of Texas in August 2022, initially bringing breach of contract and tort claims against LPL. ROA.10-34. By November 2022, LPL filed a "Motion to Compel Arbitration

---

[1] FINRA, FORM U5, https://www.finra.org/registration-exams-ce/broker-dealers/registration-forms/form-u5 (last accessed Oct. 24, 2023).

and Dismiss Under Rule 12(b)(3)[.]" ROA.50.  In January 2023, Cure, Associates, and Premier filed an amended complaint with the following causes of action:

- Tortious Interference with Existing Contract (Cure): Cure alleges that LPL interfered with her contracts with existing clients in multiple ways "[u]pon termination of its relationship with Plaintiff Cure." ROA.289.

- Tortious Interference with Prospective Contract (Cure): Cure alleges that LPL interfered with Cure's ability to affiliate with another firm due to the language in her Form U5, and that LPL threatened to terminate its relationship with anyone that talked to Cure about purchasing her book of business. ROA.290.

- Tortious Interference with Prospective Contract (Premier): Premier alleges that LPL interfered with Premier's marketability to third parties, obstructing a prospective sale. ROA.290.

- Defamation (all Plaintiffs): All Plaintiffs allege that LPL's multiple statements regarding Cure's termination were false and harmed Plaintiffs' business and reputation. ROA.291-293.

- Business Disparagement (Premier): The allegations center around the comments listed above, including statements that Cure violated LPL policies and LPL's statements to FINRA.  Premier argues that it "lost the majority of its business" as a result of these statements. ROA.294.

The District Court denied LPL's November 2022 motion as moot shortly after Plaintiffs filed the amended complaint. ROA.299-300.

LPL filed a Motion to Compel Arbitration and Dismiss Plaintiffs' Amended Complaint Under Federal Rule of Civil Procedure 12(b)(3) ("Motion to Compel") in January 2023. ROA.310.  In its Motion to Compel, LPL argued that Plaintiffs were required to arbitrate their claims pursuant to the Representative Agreement and

Form U4. ROA.318-324. LPL also urged the District Court to stay any claims not compelled to arbitration pending arbitration. ROA.324-325. Five months later, Plaintiffs finally filed a written response to the Motion to Compel, and shortly thereafter, LPL filed a written reply. ROA.472, 504. On August 16, 2023, the District Court issued an order and opinion granting LPL's Motion to Compel as to Cure and denying it as to Associates and Premier. ROA.577-90. In addition, the District Court denied LPL's request to stay litigation of Associates' and Premier's claims during the pendency of the arbitration of Cure's claims. ROA.590.

LPL filed its Notice of Appeal from the District Court's August 16, 2023 Order on September 6, 2023, specifically appealing the District Court's denial of arbitration as to Associates and Premier and the denial of a stay pending arbitration. ROA.924. LPL also moved to stay proceedings pending appeal in the District Court on August 28, 2023. ROA.928. As of the date of this brief, the District Court has not ruled on LPL's motion to stay.

## SUMMARY OF THE ARGUMENT

The District Court's order denying, in part, LPL's motion to compel arbitration of Premier's and Associates' claims against LPL and motion to stay litigation of those claims pending arbitration of Cure's claims was erroneous and should be reversed.

10

First, the parties' business relationship is governed by the Representative Agreement and Form U4, which contain clear agreements to arbitrate and which Cure and LPL signed. The District Court correctly compelled Cure's claims against LPL to arbitration, but it decided to maintain in litigation the substantively identical claims of two business entities, Associates and Premier, of which Cure is the sole owner and operator, and which Cure was only allowed to operate with LPL's approval. The doctrine of equitable estoppel demands that Premier's and Associates' claims against LPL, which are inextricably intertwined with the Representative Agreement and Form U4 and stem from Cure's termination from LPL, must proceed to arbitration.

Second, this case easily satisfies the factors for a stay of litigation pending arbitration set forth by this Court in *Waste Management, Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 343 (5th Cir. 2004). All three Plaintiffs' claims involve the same operative facts—Cure's termination and LPL's alleged subsequent acts—such that they are inherently inseparable, and litigation of those claims will have a critical, if not outcome-determinative, impact on the arbitration of Cure's claims. A stay of litigation is essential to protect LPL's contractually bargained-for right to arbitration.

In short, the District Court erred in denying LPL's Motion to Compel Premier's and Associates' claims, which are substantively identical to Cure's claims,

to arbitration. And even if this Court finds that Premier's and Associates' claims are not subject to arbitration, all litigation should be stayed pending arbitration. Consequently, LPL respectfully requests that this Court: (1) vacate the District Court's August 16, 2023 Order to the extent it denied LPL's Motion to Compel arbitration of Premier's and Associates' claims against it and motion to stay litigation pending arbitration, and (2) remand this case for further proceedings consistent with this Court's rulings.

## ARGUMENT

### I. Standard of Review

This Court reviews a district court's denial of a motion to compel arbitration and stay judicial proceedings pursuant to the Federal Arbitration Act *de novo*. *Noble Cap. Fund Mgmt., L.L.C. v. US Cap. Global Inv. Mgmt., L.L.C.*, 31 F.4th 333, 335-36 (5th Cir. 2022). This Court also "reviews *de novo* a denial of a motion to stay a proceeding pending arbitration." *Tittle v. Enron Corp.*, 463 F.3d 410, 417 (5th Cir. 2006) (emphasis added).

### II. The District Court Erroneously Denied LPL's Motion to Compel Premier's and Associates' Claims Against LPL to Arbitration.

The District Court correctly found that Cure's claims against LPL are subject to the parties' agreement to arbitrate and compelled Cure's claims against LPL to arbitration. ROA.582-584. However, the District Court erroneously held that Premier and Associates—entities solely owned and operated by Cure in the same

building and with LPL's required approval—are not required to arbitrate their nearly identical claims against LPL. ROA.584-589. Because the doctrine of equitable estoppel demands that Premier's and Associates' claims against LPL be compelled to arbitration, this Court should reverse this portion of the District Court's order and order Premier's and Associates' claims to proceed to arbitration.

As an initial matter, Cure, Premier, and Associates have never disputed that a valid agreement to arbitrate exists within the Representative Agreement. ROA.11, 486, 489. Cure also acknowledged that she submitted the Form U4. ROA.476. However, Premier and Associates do dispute the issue before this Court—whether, as nonsignatories, they are bound to the agreements to arbitrate within the Representative Agreement and Form U4.[2] ROA.489.

"If the *existence* of an arbitration contract between parties is challenged"—as is the case here—"the challenge is always for the courts to decide." *Bowles v. OneMain Fin. Grp., L.L.C.*, 954 F.3d 722, 725 (5th Cir. 2020). Where, as here, a signatory to an arbitration agreement moves to compel arbitration of a

---

[2] Cure argued below that her claims against LPL are not within the scope of the arbitration agreements. ROA.489. The District Court rejected this argument, granted LPL's motion in part to compel Cure's claims to arbitration, and dismissed Cure from the litigation. ROA.582-584, 590. Because Cure did not timely appeal, she has waived any appeal of that portion of the District Court's order. *See* Fed. R. App. P. 3(a)(1), 4(a)(3); *cf. Lonatro v. United States*, 714 F.3d 866, 869 (5th Cir. 2013) (identifying the limited issue before the Court on appeal because plaintiffs did not cross-appeal).

nonsignatory's claims, this Court must look to "state contract law" to determine whether that nonsignatory can be bound to arbitrate its claims. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630-31 (2009); *Crawford Pro. Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 255 (5th Cir. 2014).

A.   **Under California law—the parties' choice of law—equitable estoppel compels Premier's and Associates' claims against LPL to arbitration.**

As the District Court recognized, the Representative Agreement provides that California law governs its interpretation. ROA.338 (Representative Agreement; "This Agreement shall be construed in accordance with the laws of the State of California."); ROA.584 (District Court Order). Under California law, the general rule is that one must be a party to an arbitration agreement to be bound by it. *JSM Tuscany, LLC v. Superior Ct.*, 123 Cal. Rptr. 3d 429, 441 (Cal. Ct. App. 2011); *Crawford*, 748 F.3d at 260 (applying California law). One exception is the doctrine of equitable estoppel. *JSM Tuscany*, 123 Cal. Rptr. 3d at 441. Under that doctrine, "[a] nonsignatory plaintiff can be compelled to arbitrate a claim . . . when *the claim is itself* based on, or inextricably intertwined with, the contract containing the arbitration clause." *Id.* at 445 (emphasis added); *see also Pillar Project AG v. Payward Ventures, Inc.*, 279 Cal. Rptr. 3d 117, 123 (Cal. Ct. App. 2021) (same

14

principle).[3] "This is particularly true where, as appears to be the case here, all of the plaintiffs, signatory and nonsignatory, are related entities." *JSM Tuscany*, 123 Cal. Rptr. 3d at 444. "A nonsignatory can be compelled to arbitrate when a preexisting relationship existed between the nonsignatory and one of the parties to the arbitration agreement, making it equitable to compel the nonsignatory to arbitrate as well." *Id.*; *see also Crowley Mar. Corp. v. Boston Old Colony Ins. Co.*, 70 Cal. Rptr. 3d 605, 611 (Cal. Ct. App. 2008) ("Examples of the preexisting relationship include agency . . . and the relationship of a general partner to a limited partnership.").

---

[3] *See also, e.g.*, *MoistTech Corp. v. SensorTech Sys., Inc.*, No. CV 15-4952 PA (JPRx), 2015 WL 12778416, at *4-6 (C.D. Cal. Sept. 14, 2015) (plaintiff-nonsignatory, a corporation, was required to arbitrate its claims against signatory-defendant because, *inter alia*, plaintiff-nonsignatory's claims "stem[med] from the Agreement," and the corporation's directors and majority shareholders signed the relevant agreement in their individual capacities); *Lateral Link Grp. v. BLA Schwartz*, No. B253862, 2014 WL 5500382, at *4 (Cal. Ct. App. Oct. 31, 2014) (unpublished) (plaintiff-nonsignatory—an LLC whose principal owner (also a plaintiff) signed a retainer agreement for representation in an arbitration proceeding—was required to arbitrate its malpractice claims because the "complaint [was] predicated on allegations that both [the LLC] and [the principal owner] were injured by defendants' professional negligence in the underlying arbitration," thereby rendering the claims "inextricably intertwined with the retainer agreement, which contain[ed] the arbitration clause"); *Exigen Props., Inc. v. Genesys Telecomms. Lab'ys, Inc.*, No. A140081, 2016 WL 520283, at *8-10 (Cal. Ct. App. Feb. 9, 2016) (unpublished) (where two "Exigen" entities signed an agreement with Genesys that would govern the parties' "multi-dimensional relationship" and "[p]artnership," 12 related "Exigen" entities—none of which had signed the agreement—were required to arbitrate their claims against Genesys because they directly benefited from the agreement).

For example, in *JSM Tuscany*, the plaintiffs pleaded 16 total causes of action seeking recovery of damages and other relief from several defendants for their breach of three real estate contracts. 123 Cal. Rptr. 3d at 432. Two plaintiffs claimed to be third-party beneficiaries of one of the contracts. *Id.* The three real estate contracts each contained a broad arbitration clause. *Id.* The trial court denied the motion to compel arbitration on the grounds that not all of the plaintiffs and only a small number of the defendants were actually signatories to the real estate contracts. *Id.* The defendants petitioned for a writ of mandate. *Id.*

Among the various issues presented to the court of appeals was a "matter of first impression": whether a nonsignatory plaintiff asserting claims "based upon or arising out of the alleged breach of the contracts containing the arbitration clauses could also be compelled to arbitrate," even by nonsignatory defendants. *Id.* at 439-40. The court of appeals answered yes, explaining that a plaintiff who attempts to recover for a contract's breach cannot then repudiate that contract's arbitration clause. *Id.* at 443. This is "particularly true where . . . all of the plaintiffs, signatory and nonsignatory, are related entities." *Id.* at 444. The court of appeals rejected any argument that this conclusion should be limited "to claims expressly based on the breach of the [agreements]." *Id.* at 445. Instead, the court of appeals explained, "[t]he equitable estoppel doctrine extends to claims that are dependent upon or

inextricably intertwined with the obligations imposed by the contract containing the arbitration claims," not only breach-of-contract claims. *Id.*

Here, Cure and Premier initially sued LPL for breach of contract, breach of fiduciary duty, and business disparagement. ROA.29-32. Associates also sued for business disparagement. ROA.32-33. After LPL filed its November 2022 Motion to Compel in reliance on the arbitration clause in the Representative Agreement, Cure and Premier dropped their breach-of-contract claims, such that only Plaintiffs' tort claims against LPL remained. ROA.50, 290-294. The District Court acknowledged that Premier's and Associates' claims "might touch on matters relating to the contracts—such as Ms. Cure's termination" but found that this was not enough because they did not "have to rely on either contract to prove any elements of their claims." ROA.587. The District Court's inclination was correct— resolution of Premier's and Associates' claims and LPL's defenses will certainly involve analysis of the Representative Agreement. *See infra* p. 18. At minimum, because Premier's and Associates' claims are "inextricably intertwined" with the Representative Agreement, despite Premier's and Associates' artful pleading to avoid express reliance on the contract, they should be bound to its arbitration provision. *See JSM Tuscany*, 123 Cal. Rptr. 3d at 445.

First, the Representative Agreement prohibits Cure from engaging in any outside business activities without LPL's prior written notification and approval.

ROA.334 (§ 2(K)). In other words, the only way Cure could operate Premier and Associates while affiliated with LPL was with LPL's approval. *Id.* In the Representative Agreement, Cure agreed to conform herself *and her affairs* to LPL's standards, policies, and Code of Conduct. ROA.334 (§ 2(J)), ROA.336 (§ 4(C)). After Cure admitted to authoring the Skype message, which LPL determined could be considered discriminatory and contrary to LPL's Code of Conduct, LPL terminated its relationship with Cure and responded to a handful of media inquiries. ROA.281-282. Cure, Associates, and Premier assert that these statements were defamatory. ROA.291-293. And, Premier is pursuing a claim for business disparagement based on LPL's statement to FINRA on Cure's Form U5. ROA.294. However, LPL's duty to communicate with FINRA about why it terminated its affiliation with Cure arose directly from *Cure's* decision to affiliate with LPL. *See* ROA.319-320. Given Cure's agreement to abide by LPL's "established customs, standards and policies and procedures" in conducting herself *and her affairs*, resolution of Premier's and Associates' claims will require frequent reference to and reliance on the Representative Agreement. *See* ROA.336 (§ 4(C)).

Second, the record contains ample evidence that Premier's and Associates' claims are "inextricably intertwined" with Cure's claims. Cure admits that she entered into the Representative Agreement with LPL and that LPL had "contractual involvement with Plaintiff's outside business activities." ROA.245, 252. Cure is

the sole owner and operator of both Premier and Associates, and they are indisputably related entities. ROA.377-384, 386-393. In Premier's case, the record is clear that Premier is a "DBA for LPL Business (entity for LPL Business)." ROA.410. Cure specifically formed Premier to conduct her business from the Representative Agreement and receive fees and commissions from Cure's business with LPL, which the Representative Agreement governed. *See* ROA.246, 410. Indeed, Premier's Certificate of Formation was filed ***the same day*** Cure signed the Representative Agreement. *Compare* ROA.339, *with* ROA.378. It is hard to imagine any benefits Cure obtained under the Representative Agreement that Premier did not. Associates shared employees, clients, and offices with Premier and, therefore, also received direct benefits. *Compare* ROA.521, *with* ROA.531 (both Premier and Associates employed Amanda Doiron); *compare* ROA.520, *with* ROA.536 (both Premier and Associates employed Kristin Merren); ROA.537 (in response to Interrog. No. 8, Associates stated it "only . . . lost clients that were mutual Premier[] clients); *compare* ROA.384, *with* ROA.393 (listing same address for Associates and Premier).

Third, Premier's and Associates' allegations make clear that their claims are "inextricably intertwined" with Cure's claims, all of which arise out of the contractual relationship between Cure and LPL. Cure and Premier both allege that LPL tortiously interfered with their prospective contractual relationships,

obstructing the transferability or sale of Cure's and Premier's books of business. ROA.290. Premier and Associates directly rely on and incorporate by reference Cure's allegations with respect to her defamation claims. ROA.293. Premier also alleges business disparagement "as a result of the statements and actions by [LPL]"—the same "statements and actions" that Cure relies on for her individual claims against LPL. ROA.294.

Finally, all of these allegations are based on LPL's termination of Cure and LPL's alleged actions thereafter. ROA.271-288. The Representative Agreement makes clear that the parties agreed to arbitrate "all disputes, claims or controversies relating to [Cure's] association with or **termination from LPL**." ROA.338 (§ 7(c)) (emphasis added). Premier's and Associates' claims solely result from and relate to LPL's termination of Cure and alleged acts thereafter; they have not alleged a single act preceding Cure's termination as a basis for their claims. ROA.288-294.

For all of these reasons, California law and the "strong public policy in favor of arbitration"[4] dictate that Premier's and Associates' claims against LPL must be

---

[4] *See Keller Constr. Co. v. Kashani*, 269 Cal. Rptr. 259, 263 (Cal. Ct. App. 1990) (applying the "strong public policy in favor of arbitrations" to find that where a limited partnership entered into an arbitration agreement with a third party, the sole general partner of a limited partnership was also bound by the arbitration agreement because the general partner benefited from the agreement (quoting *Madden v. Kaiser Found. Hosps.*, 17 Cal. 3d 699, 706 (1976))).

compelled to arbitration, consistent with the Representative Agreement. The District Court erred in finding otherwise.

### B. Under Texas law, equitable estoppel principles also make clear that Premier's and Associates' claims must be resolved in arbitration.

The District Court also looked to Texas law, reasoning that Texas has the most significant relationship with Cure's Form U4, which also contains an agreement to arbitrate. *Compare* ROA.585-586 (District Court's Opinion), *with* ROA.364 (Form U4; "I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person[.]"). Texas courts, like California courts, recognize that equitable estoppel can bind a nonsignatory to an

arbitration provision.[5] *See G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 527 (Tex. 2015) ("We have recognized that, under principles of equitable estoppel, 'a litigant who sues based on a contract subjects him or herself to the contract's terms . . ., including the Arbitration Addendum.'" (first quoting *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 755-56 (Tex. 2001) (orig. proceeding); then citing *Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302, 305 (Tex. 2006))); *In re Vesta Ins. Grp., Inc.*, 192 S.W.3d 759, 761 (Tex. 2006) (orig. proceeding) (per curiam) ("[N]onparties generally must arbitrate claims if liability arises from a

---

[5] Courts in other jurisdictions have also applied equitable estoppel to bind nonsignatory plaintiffs to an arbitration provision. *See, e.g.*, *Bayles v. Evans*, 842 S.E.2d 235, 244-46 (W. Va. 2020) (concluding that, under doctrine of equitable estoppel, nonsignatory wife was bound to arbitrate her claims against an investment firm because she sought "the direct benefits of the contracts signed by her husband"); *Pearson v. Hilton Head Hosp.*, 733 S.E.2d 597, 605 (S.C. Ct. App. 2012) (plaintiff— a physician who signed an agreement with a medical professional placement corporation but was not a signatory to an agreement between a hospital and the medical professional placement corporation—was compelled to arbitrate his claims against the hospital because "he received a benefit due to the contract, in that he was able to work at the [h]ospital and receive payment for his work," and he sued the hospital for breach of the contract he did sign); *MTA, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 114 So. 3d 27, 31 (Ala. 2012) (noting that court had "on some previous occasions applied the equitable-estoppel exception to require the arbitration of claims asserted by a nonsignatory to a contract calling for arbitration even when the nonsignatory's claims sound in tort" (citing *Olshan Found. Repair Co. of Mobile, LP v. Schultz*, 64 So. 3d 598, 609 (Ala. 2010))); *LaSonde v. CitiFinancial Mortg. Co.*, 614 S.E.2d 224, 226 (Ga. Ct. App. 2005) (concluding nonsignatory wife's claims were "so intertwined" with those of the signatory husband "and so dependent upon [the] contract containing an arbitration clause—that [nonsignatory-wife] [was] estopped from avoiding arbitration").

contract with an arbitration clause, but not if liability arises from general obligations imposed by law."); *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 132 (Tex. 2005) (orig. proceeding) ("Claims must be brought on the contract (and arbitrated) if liability arises solely from the contract or must be determined by reference to it.").[6]

Notably, in *In re Weekley Homes*, the Texas Supreme Court explained that a party "sues based on a contract" and must "subject[] him or herself to the contract's terms"—including arbitration—when the party "seeks, through a claim, to derive a direct benefit from the contract containing arbitration provisions." 180 S.W.3d at 131-32. Moreover, the Court explained, "[u]nder both Texas and federal law, whether a claim seeks a direct benefit from a contract containing an arbitration clause turns on the substance of the claim, not artful pleading." *Id.* "[A] nonparty may be compelled to arbitrate if it deliberately seeks and obtains substantial benefits from the contract itself[,]" and "[t]he analysis [] focuses on the nonparty's conduct during the performance of the contract." *Id.* at 132-33.

---

[6] *See also LDF Constr., Inc. v. Bryan*, 324 S.W.3d 137, 146 (Tex. App.—Waco 2010, no pet.) (where an orthodontist contracted with a construction company to build a new office and subsequently sued the construction company and its agent, even orthodontist's "claims in his personal capacity (non-signatory) against [the construction company's agent] in his individual capacity (non-signatory) all ar[ose] out of that same relationship, the one created by the contract, and but for the contract would not exist"; orthodontist's claims against the construction company and that company's agent were encompassed by arbitration agreement).

The record demonstrates that Premier and Associates deliberately sought and obtained substantial benefits from Cure's relationship with LPL via the Form U4 and Representative Agreement. The Form U4 between Cure and LPL allowed Cure to register with LPL to purchase and sell securities on behalf of her clients and governed multiple aspects of the relationship between the parties and FINRA, including where Cure could engage in securities-related businesses and her registration with FINRA itself. *See generally* ROA.364. Premier's and Associates' client relationships, LPL's investigation, Cure's compliance with LPL's policies and Code of Conduct (or lack thereof), the termination of Cure's relationship with LPL, and the tortious conduct that Premier and Associates allege that LPL engaged in all plainly involve Cure and LPL's business activities, falling well within the scope of the Form U4's arbitration provision. *See* ROA.364 ("I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person[.]").

And, as shown *supra* pp. 18-19, Cure formed Premier to operate her business as a registered representative, and Premier received fees and commissions from Cure's business with LPL. ROA.410. Associates shared employees, clients, and an address with Premier while Premier operated to fulfill Cure's obligations with LPL. ROA.520-521, 531, 536-537, 384, 393. In sum, during Cure's contractual relationship with LPL, Plaintiffs operated in unison. Now, when Associates,

Premier, and Cure have lodged nearly identical claims against LPL—arising out of the same alleged conduct—Associates and Premier must be held to the arbitration agreement that LPL bargained for with Cure as a condition of LPL's association with Cure's business activities. *See In re Weekley Homes*, 180 S.W.3d at 131-33.

Accordingly, because Premier and Associates—indisputably related entities to Cure—received direct benefits from the Representative Agreement and Form U4, and their claims are "dependent upon or inextricably intertwined" with those agreements, Premier and Associates must be equitably estopped from denying the arbitration clause in those agreements. *See JSM Tuscany*, 123 Cal. Rptr. 3d at 443-45; *In re Weekley Homes*, 180 S.W.3d at 131-33. In other words, because Premier and Cure seek to avail themselves of the benefits of the contracts, they must also accept the burdens of them. The District Court erred in finding otherwise.

**III. Even if the District Court Correctly Denied LPL's Motion to Compel Arbitration of Associates' and Premier's Claims, the District Court Erroneously Denied LPL's Motion to Stay Remaining Proceedings Pending Arbitration.**

Under the FAA, if an issue in a lawsuit is "referable to arbitration under an agreement in writing for such arbitration," the district court must, on application of one of the parties, "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3 ("Section 3"); *In re Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 754 (5th Cir. 1993) ("Section 3 . . .

provides for a stay of legal proceedings whenever the issues in a case are within the reach of an arbitration agreement.").

Generally, Section 3 "only applies to parties to an agreement containing an arbitration clause." *Rainier DSC 1, L.L.C. v. Rainier Cap. Mgmt., L.P.*, 828 F.3d 356, 360 (5th Cir. 2016) (quoting *Hill v. G E Power Sys., Inc.*, 282 F.3d 343, 346 (5th Cir. 2002)). This Court has, however, explained that a stay of remaining proceedings involving nonsignatories is subject to the district court's discretion where: "(1) the arbitrated and litigated disputes involve the same operative facts; (2) the claims asserted in the arbitration and litigation are 'inherently inseparable'; and (3) the litigation has a 'critical impact' on the arbitration." *Id.* (quoting *Waste Mgmt.*, 372 F.3d at 343); *see also Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 329 (5th Cir. 1999) (agreeing with a prior ruling that "an order to stay covering claims against all defendants was proper, even though two defendants were not part of the arbitration agreement"). The essential question is "not ultimately one of weighing potential harm to the interests of the non-signatory, but of determining whether proceeding with litigation will destroy the signatories' right to a meaningful arbitration." *Waste Mgmt.*, 372 F.3d at 343. Although this Court has not specifically addressed whether a defendant-signatory may invoke Section 3 against a

plaintiff-nonsignatory,[7] LPL should be able to do so here. At minimum, applying the *Waste Management* factors, LPL is entitled to a discretionary stay of Premier's and Associates' claims pending arbitration.

The first *Waste Management* factor—the similarity of operative facts—weighs in favor of a stay. *See Waste Mgmt.*, 372 F.3d at 343. Here, the claims ordered to arbitration by the District Court—Cure's claims for tortious interference with prospective and existing contractual relationships and defamation—arise out of Cure's June 2021 statement that she wished to interview "no blacks" in filling an open position, the TikTok video publishing Cure's comment, and LPL's response.

---

[7] Some district courts within the Fifth Circuit have addressed these circumstances, but they have reached different conclusions. *Compare Cruz v. Resolute Cap. Partners LTD LLC*, No. 3:22-CV-02349-E, 2023 WL 3021079, at *7 (N.D. Tex. Apr. 20, 2023) (granting mandatory stay "of all proceedings—including those involving non-signatories to the arbitration agreement(s)"), *A-1 Am. Fence, Inc. v. Wells Fargo Bank, N.A.*, No. 1:20-CV-441, 2021 WL 7184974, at *3 (E.D. Tex. Nov. 16, 2021) ("[T]he Fifth Circuit has explicitly recognized that 'non-signatories . . . have the right to ask the court for a mandatory stay of litigation, in favor of pending arbitration to which they are not a party.'" (quoting *Waste Mgmt.*, 372 F.3d at 342-43)), *and BOKF, NA v. Wise*, No. 3:18-CV-794-N, 2019 WL 7902963, at *1 (N.D. Tex. Apr. 25, 2019) (granting mandatory stay of nonsignatory's claims), *with Peak Pipe & Supply, LLC v. UMW Oilfield (L) Int'l Ltd.*, No. 3:18-CV-410-L, 2018 WL 6177268, at *2 (N.D. Tex. Nov. 27, 2018) (refusing stay of nonsignatory's claims), *Vallejo v. Garda CL Sw., Inc.*, No. H-12-0555, 2013 WL 6190175, at *6-7 (S.D. Tex. Nov. 26, 2013) (applying *Waste Management* factors and denying stay), *and Jones Walker, LLP v. Petaquilla Minerals, Ltd.*, No. 14-1203, 2015 WL 3772670, at *5 (E.D. La. June 17, 2015) ("Plaintiff has not provided the Court with—nor is the Court aware of—any cases within this Circuit in which a court has permitted a signatory defendant to invoke a mandatory stay against a nonsignatory plaintiff.").

*See* ROA.288-294. Associates and Premier both assert claims for defamation based on LPL's statements about Cure, all of which also arose out of Cure's own statement and the TikTok video broadcasting it. *See* ROA.291-293 (describing the allegedly defamatory statements); ROA.293 (Associates' and Premier's allegations that "[s]tatements by [LPL], as described hereinabove" were defamatory *per se*). Thus, just as in *Waste Management*, "the arbitrated and litigated disputes [will] involve the same operative facts," warranting a stay. *See Waste Mgmt.*, 372 F.3d at 343.

Likewise, the second *Waste Management* factor weighs in favor of a stay because Premier's and Associates' claims are "inherently inseparable" from Cure's claims. *Id.* In determining whether the claims are inherently inseparable, "it is the violated right that matters, not the purported remedy." *Id.* at 345. In this case, the ultimate issue is whether Cure, Associates, and Premier have legal recourse against LPL for LPL's response to public dissemination of Cure's statement about a job applicant, which occurred during the course of LPL's business relationship with Cure and her entities. *Supra* pp. 17-20 (discussing claims). Premier's and Associates' claims are "inherently inseparable" from those of Cure, necessitating a stay.[8] *See Waste Mgmt.*, 372 F.3d at 345.

---

[8] Of note, the *Waste Management* Court held that the appellants were entitled to a stay based on the first and third factors, despite that there were "non-identical legal theories" between the claims compelled to arbitration and those that remained in litigation. *See Waste Mgmt.*, 372 F.3d at 345.

Finally, the third *Waste Management* factor requires a mandatory stay because the litigation will have a "critical impact" on the arbitration. *Id.* at 343. "Allowing the instant litigation to proceed [on Associates' and Premier's claims] would risk inconsistent results and substantially impact the arbitration." *Id.* at 345 (internal quotations omitted). For example, if a federal jury were to find that LPL defamed Premier and Associates and an arbitrator were to find that LPL *did not* defame Cure based on the *very same* statements, such verdicts would be flatly inconsistent. Indeed, a verdict from one forum would obviate fact-findings and legal rulings from the other. And if the litigation resolves before arbitration, "[g]iven the binding effect of a federal judgment, as well as the factual similarities in [Cure's, Premier's, and Associates'] asserted claims, the [] arbitrator would necessarily be strongly influenced to follow the court's determination." *Id.* Thus, litigation of Premier's and Associates' claims against LPL would have a critical impact on the arbitration between Cure and LPL, warranting a stay. *Id.* at 343-45.

For all of these reasons, even if this Court finds that the District Court did not err in denying LPL's Motion to Compel as to Premier and Associates, the *Waste Management* factors necessitate a stay of the litigation of Associates' and Premier's claims during the arbitration of Cure's claims.

# CONCLUSION

For the reasons stated above, Appellant LPL Financial LLC respectfully requests that this Court: (1) vacate the District Court's August 16, 2023 Order to the extent it denied LPL's Motion to Compel arbitration of Premier's and Associates' claims against LPL and stay litigation pending arbitration, (2) remand this case for further proceedings consistent with this Court's judgment, and (3) grant Appellant all other relief to which it is entitled.

Respectfully submitted,

By _/s/ Kristina Williams_
Ellen Sessions
Texas State Bar No. 00796282
Ronald D. Smith
Texas State Bar No. 24056344
Kristina Williams
Texas State Bar No. 24078303

NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201
Telephone: (214) 855-8000
Facsimile: (214) 855-8200
ellen.sessions@nortonrosefulbright.com
ron.smith@nortonrosefulbright.com
kristina.williams@nortonrosefulbright.com

Todd D. Batson
Texas State Bar No. 24068928
NORTON ROSE FULBRIGHT US LLP
1301 McKinney Street, Suite 5100
Houston, Texas 77010-3095
Telephone: (713) 651-5151
Facsimile: (713) 651-5246
todd.batson@nortonrosefulbright.com

Jo Ben Whittenburg
Texas State Bar No. 21396700
ORGAIN BELL & TUCKER, LLP
470 Orleans Street
P.O. Box 1751
Beaumont, TX 77704
Telephone: (409) 838-6412
Facsimile: (409) 838-6959
jbw@obt.com

*Counsel for Appellant LPL Financial LLC*

**CERTIFICATE OF SERVICE**

The undersigned counsel certifies that an electronic copy of Appellant's Opening Brief on the Merits was served by the Court's electronic-filing system on counsel for Appellees in compliance with Federal Rule of Appellate Procedure 25 and Fifth Circuit Rule 25.2.5 on October 30, 2023. The undersigned counsel further certifies that an electronic (PDF) copy of said brief was electronically filed with the Clerk of the Fifth Circuit in compliance with Fifth Circuit Rule 25.2 on October 30, 2023.

*/s/ Kristina Williams*
Kristina Williams
*Attorney of Record for Appellant*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Fifth Circuit Rule 32.2, this brief contains 7,086 words.

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally-spaced typeface using Microsoft Word in Times New Roman 14-point font.

*/s/ Kristina Williams*
Kristina Williams
*Attorney of Record for Appellant*